[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action brought on a promissory note. The plaintiff, Samuel Wilson, is the holder of a promissory note dated May 14, 1993, wherein the defendant George Marenna agreed CT Page 1326 to pay Mark A. Milano, Trustee for Samuel Wilson, the sum of $11,000.00 with interest at a rate of 7 1/2% per annum. The note was to be paid in monthly payments of $342.18 commencing on June 1, 1993 and terminating on May 1, 1996, with the entire balance of principal and interest then outstanding to be paid in the final payment of May 1, 1996. Mr. Milano was acting as the attorney for Mr. Wilson, and all payments were to be made to Mr. Milano at his office. Executed contemporaneously with the note was a security agreement whereby the defendant granted the plaintiff a continuing security interest in three motor vehicles, a Dragon Bounce amusement ride, and a Water-gun Race Trailer, to secure the payment of the note.
The litigation between these parties, and which led to the execution of the $11,000 note referred to above, commenced in April, 1993, when the plaintiff served the defendant with an application for a prejudgment remedy, two affidavits in support of the application, an unsigned writ summons and complaint, an application for an ex parte temporary restraining order, and proposed orders with respect to the two applications. The court granted the temporary restraining order and scheduled the application for a prejudgment remedy for a hearing.
The proposed suit by the plaintiff, and the application for a prejudgment remedy, were based on a claim that from the late summer of 1990 through October, 1992, the defendant had borrowed $29,800.00 from the plaintiff by way of a series of loans, allegedly to keep the defendant's amusement business in operation, and now was refusing to repay the plaintiff, although at the time the loans were made the defendant had agreed to repay them upon demand.
A hearing was scheduled for May 17, 1993 with respect to the prejudgment remedy application and the temporary restraining order. On that date Attorney Milano, representing the plaintiff, and the defendant, who was not represented by counsel, appeared before the court, Hodgson, J. The plaintiff was not present in court. Mr. Milano reported to the court, on the record, that the parties had reached a settlement of the dispute. Mr. Milano then set forth the terms of the agreement, and under questions by the court, the defendant stated that the terms of the agreement as stated by Mr. Milano were correct.
The agreement of the parties was not set forth in a written agreement but was stated for the record before Judge Hodgson. The CT Page 1327 agreement provided that the plaintiff would withdraw his application for a prejudgment remedy, the plaintiff and the defendant would execute mutual general releases, the defendant would pay the plaintiff $21,000.00 by way of a payment of $10,000.00 in cash, and the execution of the aforesaid $11,000.000 promissory note, and that the note would be secured by the aforesaid security agreement. Mr. Milano also stated that the parties had further agreed that the defendant would conduct himself as though the temporary restraining order were still in effect, and that the plaintiff "will not go on the property owned by the defendant, or interfere with his equipment or property, or interfere with his family." In fact, several days previous to the court hearing, the general releases had been executed, $10,000.00 had been paid to the plaintiff, and the promissory note and security agreement had been executed. The provisions of the restraining order which the defendant agreed to obey are not relevant to any issues in the case at bar. The prejudgment remedy application was formally withdrawn shortly after the court hearing, and the writ summons and complaint was never served.
In this action the plaintiff is seeking damages because of the alleged failure of the defendant to complete all of the monthly payments as provided in the promissory note. The plaintiff claims that the defendant made nineteen monthly payments of $342.18 from May 1, 1993 until December 1, 1994, but has failed to make the additional seventeen monthly payments.
The defendant has admitted that he stopped making the payments as of December 1, 1994. It is his claim, made by way of special defense, that he was relieved from making any further payments because of certain conduct on the part of the plaintiff. This special defense is that since all of the payments due to the plaintiff were contingent upon the plaintiff's compliance with the settlement agreement reached in May, 1993, and since the plaintiff has breached that agreement and is in default of the agreement, no further payments are due and that, therefore, the plaintiff has been paid in full. In his post trial memorandum, for the first time, the defendant makes an additional claim based on the plaintiff's testimony at trial. This claim is that since the plaintiff testified that he did not settle the case in May of 1993, this demonstrates that there was no meeting of the minds on that occasion and, therefore, no valid contract ever came into existence, and the defendant could not be in breach of a contract that never existed. CT Page 1328
With respect to the first special defense the conduct by the plaintiff which the defendant claims constitutes a breach of the settlement agreement consists of the following. The plaintiff walked back and forth in front of the West Haven City Hall in January and February of 1994, carrying placards accusing the defendant of committing criminal acts against the plaintiff. The plaintiff appeared at a West Haven City Council meeting on January 10, 1994 and accused the defendant of committing criminal acts related to the money that was the subject of the 1993 litigation. And lastly, that the plaintiff called in to a radio talk show in June, 1994 and accused the defendant of being a crook. The plaintiff admitted at trial that these activities were all related to the alleged conduct of the defendant in obtaining various sums of money in 1990-1992, which was the subject of the 1993 agreement.
While the conduct of the plaintiff which the defendant found objectionable, and which he claims justified stopping the payments, occurred between January and June, 1994, the defendant continued to make payments on the note each month until December 1, 1994. The defendant testified that an article in the West Haven News, a local news paper, on October 14, 1994, which contained slanderous remarks about him by the plaintiff was "the straw that broke the camel's back", and he decided not to make any further payments. However, for an unexplained reason, he made payments on November 1 and December 1, 1994 before terminating payments.
The principal issue before the court is whether the plaintiff's aforesaid conduct, no matter how objectionable it may have been to the defendant, constituted a breach of the 1993 settlement agreement. The court finds that it does not. There was no evidence that the plaintiff ever went on any property of the defendant, or that he ever interfered with the defendant's equipment or property. The claim by the defendant is that by his conduct as set forth above, the plaintiff interfered with the defendant and his family. There was no evidence that the defendant has a family, much less any evidence of interference with such a family. The settlement agreement did not provide that the plaintiff would not interfere with the defendant, as is suggested in the defendant's brief, although restrictions on the type of conduct engaged in by the plaintiff easily could have been included in the agreement. The defendant has failed to prove his first special defense. CT Page 1329
The defendant also raised a second special defense, claiming that he has been discharged in bankruptcy from any unsecured debt owed to the plaintiff. This special defense has been proven. It is not applicable to any debt which this court finds is owed by the defendant to the plaintiff and which is secured. The defendant concedes that the plaintiff does have a valid security interest in the items of personal property, or the proceeds from the sale of any of those items, as listed in schedule A of the security agreement.
The claim by the defendant, that based on the plaintiff's testimony, there was no meeting of the minds of the parties in May 1993 is without merit. There was a valid settlement agreement entered into and substantially carried out. The testimony of an elderly plaintiff, six and one half years later, does not affect the validity of the agreement.
The court finds that the plaintiff has proven the material allegations of his complaint, that the defendant has failed to prove his first special defense, and that the defendant has proven his second special defense. The court finds that the defendant is obligated to the plaintiff in the amount of $5,817.06, consisting of the remaining seventeen payments of $342.18 each. The court finds that no interest is to be awarded.
Accordingly, for the reasons above stated, judgment may enter in favor of the plaintiff, for an interest in his liens on the four items of property listed on the Schedule A of the security agreement (Exhibit A), and if any of these items have been sold, on the proceeds received from such sales, in the total amount of $5,817.06.
William L. Hadden, Jr. Judge Trial Referee